**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HANNA KLEINPETER-FLECK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COLLINS & AIKMAN CORPORATION, DAVID A. STOCKMAN, J. MICHAEL STEPP and BRYCE M. KOTH,<br><br>Defendants | Case No. 1:05-cv- 03791-MGC |
| K. J. EGLESTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JERRY L. MOSINGO, DAVID A. STOCKMAN, J. MICHAEL STEPP and BRYCE KOTH,<br><br>Defendants | Case No. 1:05-cv-04950-JGK |
| MORRIS AKERMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COLLINS & AIKMAN CORPORATION, DAVID STOCKMAN, J. MICHAEL STEPP and BRYCE KOTH,<br><br>Defendants | Case No. 1:05-cv- 05098-UA |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF K. J. EGLESTON**
**FOR CONSOLIDATION, APPOINTMENT**
**AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**PAGE NO.**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

PROCEDURAL BACKGROUND........................................................................................ 2

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ........................................................................................................................ 7

I.     THE ACTIONS SHOULD BE CONSOLIDATED ............................................... 7

II.    MOVANT K. J. EGLESTON SHOULD BE APPOINTED LEAD PLAINTIFF.............. 7

    A.     The Procedure Required by the PSLRA ................................................. 7

    B.     Movant K. J. Egleston Satisfies the "Lead Plaintiff" Requirements
        of the PSLRA ................................................................................. 8

        1.     Movant K.J. Egleston Has Complied with the PSLRA and
            Should Be Appointed Lead Plaintiff............................................ 8

        2.     The Movant Has the Largest Financial Interest in the Relief
            Sought by the Class...................................................................... 9

        3.     The Movant Otherwise Satisfies Rule 23 ................................. 10

III.   THE COURT SHOULD APPROVE MOVANTS K.J. EGLESTON'S
      CHOICE OF COUNSEL ...................................................................................... 12

CONCLUSION.................................................................................................................... 13

**TABLE OF AUTHORITIES**

**CASES**

**Page(s)**

In Re Auction Houses Antitrust Litigation,
    197 F.R.D. 71 (S.D.N.Y. 2000) ..................................................................................13

Avagliano v. Sumitomo Shoji America, Inc.,
    103 F.R.D. 562 (S.D.N.Y. 1984) ................................................................................11

Bassin v. Decode,
    04 Civ. 7050,
    2005 U.S. Dist. LEXIS 51 (S.D.N.Y. Jan. 3, 2005) ...............................................2, 9

Bishop v. New York City Department of Housing Preservation and Development,
    141 F.R.D. 229 (S.D.N.Y. 1992) ................................................................................11

In re Cable & Wireless, PLC, Sec. Litigation,
    217 F.R.D. 372 (E.D. Va. 2003).................................................................................11

In re Cavanaugh,
    306 F.3d 726 (9th Cir. 2002) ..................................................................................8, 13

In re Drexel Burnham Lambert Group, Inc.,
    960 F.2d 285 (2d Cir. 1992),
    cert. dismissed sub nom., 506 U.S. 1088 (1993) .......................................................11

Ferrari v. Impath,
    03 Civ. 5667,
    2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15,2004) .........................................9, 10

Fischler v. Amsouth  Bancorporation,
    96-1567-C,
    1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997) .............................................10

Garfinkel v. Memory Metals, Inc.,
    695 F. Supp. 1397 (D. Conn. 1988).............................................................................12

Greebel v. FTP Software,
    939 F. Supp. 57 (D. Mass. 1996)...................................................................................8

Lax v. First Merchants Acceptance Corp.,
    97 Civ. 2715,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) ...........................................10

In re MicroStrategy Inc. Sec. Litigation,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ...................................................................................11

In re Olsten Corp.,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................................................................................2

In re Party City Sec. Litigation,
    189 F.R.D. 91 (D.N.J. 1999)...................................................................................................2

Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.,
    03 Civ. 8264,
    2004 U.S. Dist. LEXIS 9571 (S.D.N.Y. May 27, 2004) ........................................................9

In Re Razorfish, Inc. Securities Litigation,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) ..................................................................................13

Sczesny Trust v. KPMG LLP,
    223 F.R.D. 319 (S.D.N.Y. 2004) ...........................................................................................9

Walsh v. Northup-Grumman Corp.,
    162 F.R.D. 440 (E.D.N.Y. 1995)..........................................................................................12

Zaltzman v. Manugistics Group, Inc.,
    S-98-1881,
    1998 U.S. Dist. LEXIS 22867 (D. Md. Oct. 8, 1998) .........................................................11

**STATUTES**

15 U.S.C. § 78u-4(a)(3) ................................................................................................ passim

Plaintiffs K. J. Egleston submits this memorandum of law in support of his motion for: (i) consolidation of the actions referenced in the instant captions (the "Actions"); (ii) appointment as Lead Plaintiff, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "1934 Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) approval of Lead Plaintiff's selection of Lead Counsel.

## INTRODUCTION

The Actions are securities fraud class actions brought against certain officers and directors of Collins & Aikman Corporation ("Collins & Aikman" or the "Company") who, but for the automatic stay provisions of the United States Bankruptcy Code would be a defendant in this action (all collectively, "Defendants"). The complaint alleges violations of Sections 10(b) and 20(a) of the 1934 Act, and Rule 10b-5 promulgated thereunder, on behalf of a class (the "Class") consisting of all persons, other than defendants, who acquired Collins & Aikman securities during the period from May 15, 2003 to March 17, 2005, inclusive (the "Class Period").

Movant K. J. Egleston (the "Movant") acquired 2,000 shares of Collins & Aikman common stock during the Class Period and suffered $6,390.00 in losses as a result of Defendants' misconduct. The Movant seeks Court approval of his appointment as Lead Plaintiff and his selection of Lead Counsel for himself and the Class as set forth herein. The Movant believes he has the largest financial interest in the litigation. See, e.g., In re Olsten Corp., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998)(citing Lax v. First Merchants Acceptance Corp., 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *5 (N.D. Ill. Aug. 11, 1997)). Also, see Bassin v. Decode, 04 Civ. 7050 (RJH), 2005 U.S. Dist. LEXIS 51, at *8 (S.D.N.Y. Jan. 3, 2005) (Holwell, J.). As discussed below, the Movant has satisfied each of the requirements of the PSLRA and this Court and, therefore, is qualified for appointment as Lead Plaintiff in this Action.

## PROCEDURAL BACKGROUND

On April 5, 2005, notice of pendency of a class action on behalf of a class consisting of all persons who purchased the securities of Collins & Aikman, during a proposed Class Period of between May 6, 2004 and March 17, 2005 inclusive, over a widely-available, national business-oriented newswire service, PRNewswire, advising members of the proposed class of their right to move the Court to serve as lead plaintiff(s) no later than 60 days from the date of publication of the notice.  See Bruckner Decl., Ex. A.

## STATEMENT OF FACTS[1]

Collins & Aikman is engaged primarily in the design, engineering and manufacture of automotive interior components, systems and modules. The Company supplies products from three primary categories: plastic components and cockpits, soft trim and convertible roof systems.  Collins & Aikman corporate offices are located at 250 Stephenson Highway, Troy, Michigan 48083. Collins & Aikman employs 24,000 individuals and has a network of more than 100 technical centers, sales offices and manufacturing sites in 17 countries.

Throughout the Class Period, Collins & Aikman issued statements and press releases, and filed reports with the SEC describing the Company's business and financial condition. These representations were materially false and misleading throughout the Class Period because they failed to disclose and/or misrepresented the following adverse facts, among others: (1) that the Company improperly accounted for certain supplier rebates; (2) that the Company's financial statements required net adjustments of approximately $10-$12 million; (3) that the Company's financial statements were not prepared in accordance with GAAP; (4) that the Company lacked

---

[1]    All facts are taken from the complaint styled K.J. Egleston v. Jerry L. Mosingo, et al. which is attached to this motion as per Your Honor's Individual Practices.  See Bruckner Decl., Ex. B.

adequate internal controls and was therefore unable to ascertain the true financial condition of the Company; and (5) that as a consequence of the foregoing, the Company's net income and financial results were materially overstated.

At the end of each quarter throughout the class period, the Company announced financial results which were later repeated and reaffirmed in the Company's Reports on Form 10-Q filed with the SEC which were signed by one or more of the Defendants.

Defendants Stockman touted the Company's results, after they were announced in November 9, 2004, stating: "For the fifth consecutive quarter our EBITDA performance, excluding restructuring and impairment charges, was up from the prior year on a comparable basis.  This was achieved despite the headwinds from increased commodity costs and OEM production cuts.  The savings from the restructuring program that began in the third quarter of 2003 has generated significant fixed cost reductions."

On March 17, 2005, Collins & Aikman issued a press release announcing a delay in filing its Form 10-K and admitted that the Company had improperly accounted for $2 million in vendor rebates in 2004, thereby requiring a restatement of its results for the first three quarters of 2004 and perhaps of fiscal year 2003.  Collins & Aikman further announced that the Company's audit committee had retained the law firm of Davis & Polk to assist with it ongoing investigation. The press release stated:

> The Company did not file its Annual Report on Form 10-K containing fiscal 2004 audited financial statements by its due date yesterday since it requires additional time to complete the review of the accounting issues referred to below, the financial reporting process, and the Company's assessment of controls over financial reporting.  As permitted by Rule 12b-25 under the Securities Exchange Act of 1934, the Company today filed a notification providing that, among other things, its Form 10-K filing will nonetheless be timely filed if it is filed no later than 15 calendar days after its original due date.  The audit, and other necessary

3

work required for the Form 10-K to be filed, may not be completed within that extended time frame.

During the course of finalizing its financial statements for its fiscal year ended December 31, 2004, the Company identified certain accounting for supplier rebates that led to premature or inappropriate revenue recognition or that was inconsistent with relevant accounting standards and the Company's policies and practices. The Company immediately initiated an internal review of these matters and expects to restate its results for the nine months ended September 30, 2004 to reflect the correct accounting for these rebates. The Company is continuing to evaluate whether a restatement of its 2003 results will be necessary. The Company presently expects to reduce its previously reported operating income by $10 - $12 million for the nine months ended September 30, 2004. The Company's outside auditors have not reviewed these conclusions, and additional adjustments may be required.

*    *    *    *

Internal Accounting Investigation and Related Matters

In the ordinary course, the Company has received and continues to receive rebates as a result of anus length transactions with its vendors. Depending upon the terms of the rebate agreement, these rebates are either recognizable in the quarter in which the rebate agreement is reached or recognized over an appropriate future period. In the course of finalizing the Company's 2004 financial results, the Company identified certain issues related to accounting for supplier rebates that led to premature or inappropriate income recognition or that was inconsistent with relevant accounting standards and the Company's policies and practices. The Company immediately initiated a review of all vendor rebates it received from 2002 through 2004 to ensure that it has properly recognized the rebates in the appropriate quarterly period. The Company has completed its accounting review of these rebates, but expects to undertake a thorough review of its controls, procedures and other circumstances that led to the premature or inappropriate income recognition and that was inconsistent with relevant accounting standards and the Company's policies and practices. The nature and scope of that review is under consideration. The Company's Audit Committee and outside auditors have been informed of these issues and are evaluating an appropriate course of action.

The Company's internal review of vendor rebates covered an aggregate of approximately $88 million of vendor transactions in fiscal years 2002 through 2004. Of such amount, the Company

4

believes that net adjustments of approximately $10 - $12 million, are required primarily occurring during fiscal 2004. The Company expects to restate its results for the nine months ended September 30, 2004 to reflect these revisions. The Company is continuing to evaluate whether a restatement of its 2003 results will be necessary. We have not taken into account this impact in our preliminary report of 2004 results. These preliminary results remain subject to material change and have not been reviewed by our outside auditors.

The Company is working towards completion of its assessment of internal controls over financial reporting required under Section 404 of the Sarbanes-Oxley Act and has concluded that certain material weaknesses, in addition to the matters leading to the restatement described above, existed at December 31, 2004, but its assessment of the effectiveness of the Company's control over financial reporting is ongoing and the extent of those material weaknesses remains under review. The Company's outside auditor is in the process of completing its audit of internal controls over financial reporting and has communicated the existence of material weaknesses. The potential material weaknesses identified include the following: (i) the adequacy of the Company's resources with appropriate accounting expertise to address accounting and reporting matters in certain areas, including revenue recognition, vendor arrangements and post-retirement benefits, and to supervise the Company's decentralized and disparate accounting environment and ensure an appropriate segregation of duties; (ii) the adequacy of the Company's internal audit function's resources and ability to monitor compliance with established policies and procedures; (iii) the effectiveness of certain information technology controls and the sufficiency of documentation to assess the effectiveness of such controls including embedded system application controls; (iv) the adequacy of procedures to consistently identify and reconcile fixed assets and periodically review assets for impairment; and (v) the completeness and consistent adherence to Company policies and procedures. These issues include a range of documentation- related issues and reconciliation issues. Other material weaknesses may be identified as a result of further investigation of the circumstances surrounding the expected restatement arising from vendor rebates. Our review and the audit is ongoing.

While the Company has implemented remediation steps with respect to certain significant deficiencies and material weaknesses, a number of issues still need to be addressed. The Company's remediation plans include the assignment of specific resources with given timelines for each finding. Measurement criteria have

5

also been established to monitor the progress of these remediation efforts. To ensure that the Company addresses these issues thoroughly, effectively, and timely, the internal audit department has been supplemented with the services of several outside specialists. Further required remediation will be identified and undertaken as a result of the internal accounting investigation.

Impact on Financing Arrangements

The Company intends to operate in the ordinary course, but it cannot presently comment upon the timing for completion of, or the ultimate scope or outcome of, the internal accounting investigation, the audit and the restatements. Until the audit and any restatements are complete, it will be difficult to determine the full scope of any financial restatement or prior period adjustments arising from these irregularities. Consequently, the Company is still evaluating its financial covenant compliance under its senior credit facility, as well as other compliance issues under other financing arrangements. If necessary or desirable, the Company will seek a waiver of relevant provisions.

The Company is obligated to provide audited financial statements under a number of its debt, receivables facility, operating lease and other agreements within prescribed periods. The Company relies upon its receivables facility with GE Capital Corporation for its liquidity and the unavailability of funds thereunder would be material and adverse. The Company has received waivers of various provisions of its receivables financing facility and its Hermosillo, Mexico funding arrangements, both of which are held by GE Capital Corporation, so that it will continue to provide the Company with access to financing under those facilities in the ordinary course of business until May 20, 2005, absent certain new adverse developments. The Company also intends to seek waivers and amendments of its bank credit facilities and of various lease agreements, as required or desirable. There can be no assurance that any other required or desirable waivers will be received on a timely basis and the failure to obtain waivers could be material and adverse.

Upon this disclosure, shares of the Company's stock fell $0.39 per share, or about 24% to

close at $1.24 per share, on unusually heavy trading volume.

Defendants misrepresented the Company's revenues through accounting improprieties

resulting in reported financial results that were materially false and misleading, and in violation

of Generally Accepted Accounting Principles ("GAAP"), as well as the Company's own stated accounting policies. Moreover, Defendants represented to the public that Collins & Aikman was a successful automotive supply company, with good financial results, while concealing that the Company's financial expectations were the results of Defendants' having artificially inflated the Company's revenues by failing to properly account for supplier credits and rebates.

## ARGUMENT

### I.      The Actions Should Be Consolidated

The above-captioned actions involve class action claims on behalf of all who purchased shares of any and/or every class of Collins & Aikman shares during the Class Period and assert essentially similar and overlapping class claims.  Consolidation is appropriate where, as here, there are actions involving common questions of law or fact.  See Fed. R. Civ. P. 42 (a); Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.), cert. denied, 498 U.S. 920 (1990).  That test is met here, and the Actions should be consolidated.

### II.     Movant K. J. Egleston Should Be Appointed Lead Plaintiff

#### A.      The Procedure Required by the PSLRA

The PSLRA has established the procedure that governs the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  Notice of an action was published via PRNewswire on April 5, 2005.  See Bruckner Decl., Ex. A.  Second, within 60 days after publication of the first notice, any person or group of persons who are members of the proposed

class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  15 U.S.C. § 78u-4(a)(3)(A) and (B).

Third, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  15 U.S.C. § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that --
>
> (aa)    has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).  See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).  See also In re Cavanaugh, 306 F.3d 726, 729 n.2 (9th Cir. 2002): "The Act sets up a rebuttable presumption that the plaintiff with the largest stake in the controversy will be the lead plaintiff."  Movants satisfy each of these criteria and specifically have the largest financial interest in the relief sought by the class.

### B.    Movant K. J. Egleston Satisfies the "Lead Plaintiff" Requirements of the PSLRA

#### 1.    Movant K.J. Egleston Has Complied with the PSLRA and This Court's Order and Should Be Appointed Lead Plaintiff

Pursuant to the provisions of the PSLRA, the Movant K.J. Egleston has timely moved to be appointed lead plaintiff within the requisite time frame on behalf of all members of the Class.

The Movant has duly signed and filed a certification stating that he has reviewed the complaint filed in the action and is willing to serve as a representative party on behalf of the Class. <u>See</u> Bruckner Decl., Ex. B. In addition, the Movant has selected and retained experienced and competent counsel to represent itself and the Class. <u>See</u> Bruckner Decl., Ex. D.

Accordingly, the Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have his application for appointment as Lead Plaintiff and selection of counsel, as set forth herein, considered and approved by the Court.

### 2.    The Movant Has the Largest Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action. "In light of the PSLRA's silence in prescribing a method for assessing a movant's financial interest, courts have examined several factors such as: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." <u>Bassin v. Decode</u>, 04 Civ. 7050 (RJH), 2005 U.S. Dist. LEXIS 51, at *8 (S.D.N.Y. Jan. 3, 2005) (Holwell, J.) <u>See also</u> <u>Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.</u>, 03 Civ. 8264 (RWS), 2004 U.S. Dist. LEXIS 9571, at *7 (S.D.N.Y. May 27, 2004) (quoting <u>Lax v. First Merchants Acceptance Corp.</u>, 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *5 (N.D. Ill. Aug. 11, 1997)); <u>Sczesny Trust v. KPMG LLP</u>, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); <u>Ferrari v. Impath</u>, 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, (S.D.N.Y. July 15,2004), at *4.

During the Class Period, as evidenced by, among other things, the accompanying signed certification, Movant K.J. Egleston acquired 2,000 shares of Collins & Aikman common stock for $7,990.00 and thereby suffered $6,390.00 in losses as a result of Defendants' misconduct.

9

The Movant herein has a significant financial interest in this case.[2]  The Movant has not received notice of any other applicant or applicant group that has sustained greater financial losses in connection with the purchase and/or sale of the Company's common stock.  Therefore, the Movant satisfies all of the PSLRA's prerequisites and the practice of this judicial district for appointment as Lead Plaintiff in this action and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3.    The Movant Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as lead plaintiff, the Court shall limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  Lax v. First Merchants Acceptance Corp., 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 11, 1997); Fischler v. Amsouth

---

[2]    It is well established in this judicial district that the presumptive Lead Plaintiff is the movant with the largest financial interest in the litigation.  See Ferrari v. Impath, 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004)(Batts, J.) where Plaintiffs Group with largest financial interest in the Class appointed Lead Plaintiff.

Bancorporation, 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-*8 (M.D. Fla. Feb. 6,

1997); Zaltzman v. Manugistics Group, Inc., S-98-1881, 1998 U.S. Dist. LEXIS 22867, at *20

(D. Md. Oct. 8, 1998).

The Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby

justifying his appointment as lead plaintiff.  Under Rule 23(a)(3), the claims or defenses of the

representative parties must be typical of those of the class.  Typicality exists if claims "arise from

the same course of events, and each class member makes similar legal arguments to prove the

defendant's liability."  See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d

Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993); In re Cable & Wireless, PLC, Sec.

Litig., 217 F.R.D. 372, 375 (E.D. Va. 2003); In re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d

427, 435-36 (E.D. Va. 2000). However, the claims of the class representative need not be

identical to the claims of the class to satisfy typicality.  Instead, the courts have recognized that:

> [T]he typicality requirement may be satisfied even if there are
> factual dissimilarities or variations between the claims of the
> named plaintiffs and those of other class members, including
> distinctions in the qualifications of the class members.

Bishop v. New York City Dep't of Hous. Pres. and Dev., 141 F.R.D. 229, 238 (S.D.N.Y. 1992).

See also Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D. 562, 582 (S.D.N.Y. 1984).

The Movant seeks to represent a class of all persons, other than defendants, who acquired

Collins & Aikman securities during the Class Period, who have identical, non-competing and

non-conflicting interests.   The Movant satisfies the typicality requirement because he:

(i) acquired Collins & Aikman securities during the Class Period; (ii) at a price allegedly

artificially inflated as a result of Defendants' violations of the federal securities laws; and (iii)

suffered damages thereby.  Thus, typicality is satisfied since the claims asserted by the Movant

"arises from the same event or course of conduct that gives rise to claims of other class members

11

and the claims are based on the same legal theory." Walsh v. Northup-Grumman Corp., 162

F.R.D. 440, 445 (E.D.N.Y. 1995).

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the

interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met

by : (1) the absence of potential conflict between the named plaintiff and the class members,

and (2) the class representative's choice of counsel who is qualified, experienced and able to

vigorously conduct the proposed litigation. Garfinkel v. Memory Metals, Inc., 695 F. Supp.

1397, 1405 (D. Conn. 1988).

The Movant is an adequate representative of the class. As evidenced by the injury

suffered by the Movant, who acquired Collins & Aikman securities at prices allegedly artificially

inflated by Defendants' violations of the federal securities laws, the Movant's interests are

clearly aligned with the members of the class, and there is no evidence of any antagonism

between the Movant's interests and those of the other members of the class. In addition, as

shown below, the Movant's proposed Lead Counsel is highly qualified, experienced and able to

conduct this complex litigation in a professional manner. Thus, the Movant's prima facie

satisfies the commonality, typicality and adequacy requirements of Rule 23.

Clearly, the Proposed Lead Plaintiff satisfies all prongs of the Exchange Act's

prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. §78u-

4(a)(3)(B)(iii).

**III.   The Court Should Approve Movant K.J. Egleston's Choice of Counsel**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), proposed lead plaintiff shall, subject to court

approval, select and retain counsel to represent the class they seek to represent. In that regard,

the Movant has selected and retained Wolf Haldenstein Adler Freeman & Herz LLP to serve as

Lead Counsel for the Class. This firm has extensive experience in successfully prosecuting

12

complex securities actions and has frequently appeared in major actions in this and other courts.

See Bruckner Decl., Ex. E.

Because there is nothing to suggest that the Movant or his counsel will not fairly and adequately represent the Class, or that the Movant is subject to unique defenses – which is the only evidence that can rebut the presumption of adequacy under the Act – this Court should appoint the Movant as Lead Plaintiff and approve Movant's selection of Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, the Movant requests that the Court:  (i)  consolidate the above captioned actions; (ii) appoint Movant K.J. Egleston as Lead Plaintiff in the Action; and (ii) approve Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel for the Class.

DATED:    June 6, 2005
                New York, New York

                                        Respectfully submitted,

                                        **WOLF HALDENSTEIN ADLER
                                        FREEMAN & HERZ LLP**


                                        By:  _____/s/_____
                                               Fred Taylor Isquith, Esq. (FI-6782)
                                               Gustavo Bruckner, Esq. (GB-7701)
                                               Aya Bouchedid, Esq.
                                        270 Madison Avenue
                                        New York, New York 10016
                                        Telephone:  (212) 545-4600
                                        Facsimile:  (212) 545-4653

                                        **Proposed Lead Counsel**

13

Thomas J. McKenna
Gainey & McKenna
485 Fifth Avenue, 3rd Floor
New York, New York 10017
Tel:  212-983-1300
Fax:  212-983-0383

**Additional Plaintiff's Counsel**

/404284

14